**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEREMY S., SR., | |
| Plaintiff, | |
| | Case No. 19 C 2837 |
| v. | |
| | Magistrate Judge Sunil R. Harjani |
| ANDREW M. SAUL, | |
| Commissioner of Social Security, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeremy S., Sr. seeks judicial review of the final decision of the Commissioner of Social Security finding him ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have moved for summary judgment. For the following reasons, Jeremy's motion [18] is granted in part and denied in part, the Commissioner's motion [30] is denied, the ALJ's decision is reversed, and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Jeremy served in the United States Army from 2000 to 2003. (R. 149, 753). His service included a tour in Kosovo, during which time he obtained knee injuries, was shot at, and saved the life of a child. *Id.* at 891. Upon returning to the United States, Jeremy began experiencing hypervigilance, flashbacks, and nightmares; he struggled to concentrate and control his anger. *Id.* at 891-92, 963, 969. Jeremy was diagnosed with chronic Post Traumatic Stress Disorder (PTSD), depressive disorder, and insomnia. *Id.* at 458, 962, 1007, 1024, 1231. Jeremy's medical record shows that he continued to suffer from these ailments, despite his treatments, which included prolonged exposure therapy,

talk therapy, and numerous prescription medications, such as sertraline, lorazepam, trazodone, and risperidone. *Id.* at 932, 1122, 1199, 1230-34.

Jeremy filed for a period of disability and disability insurance benefits on September 8, 2017, alleging disability beginning January 1, 2009. (R. 289-90). Jeremy's claim was initially denied on October 10, 2017 and upon reconsideration on December 26, 2017. *Id.* at 188, 196. Upon Jeremy's written request, he appeared and testified at a hearing held on September 21, 2018 before ALJ Janet Akers. *Id.* at 143-182. At the hearing, the ALJ heard testimony from Jeremy and a vocational expert, Dennis Gustafson. *Id.* On October 26, 2018, the ALJ issued a decision denying Jeremy's application. *Id.* at 15-33. The ALJ followed the required five-step evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found that Jeremy had not engaged in substantial gainful activity from January 1, 2009, the alleged onset date, through September 30, 2013 the last insured date. *Id.* at 18. At step two, the ALJ found that Jeremy had the severe impairments of PTSD and major depressive disorder. *Id*. At step three, the ALJ determined that Jeremy did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id*. at 19.

The ALJ then concluded that Jeremy retained the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant retained the ability to perform simple routine tasks, make simple work-related decision, occasionally interact with supervisors, coworkers and the public, incidental to the work being performed, respond appropriately to gradual and infrequent changes in a routine work setting, working more with things rather than people

with time off task accommodated by normal breaks." (R. 21). The ALJ next determined, at step four, that Jeremy could perform his past relevant work of warehouse worker and marker II. *Id.* at 31. The ALJ further found that there were other jobs existing in the national economy that Jeremy was able to perform, including cleaner, non-machine production worker, and bottling line attendant. *Id.* at 32. The ALJ accordingly determined that Jeremy was not disabled. *Id.* at 33. The Appeals Council denied Jeremy's request for review on March 1, 2019, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-3; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## DISCUSSION

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a sequential five-step inquiry. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled." *Zalewski*, 760 F.2d at 162 n.2.

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Scheck v. Barnhart*, 357

3

F.3d 697, 699 (7th Cir. 2004). In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation marks and citation omitted). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge from the evidence to her conclusion[s]." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation and quotations omitted); *see also Fisher v. Berryhill*, 760 F. App'x 471, 476 (7th Cir. 2019). Moreover, when the ALJ's "decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Jeremy argues that the ALJ failed to adequately account for her finding of moderate limitations of concentration, persistence, or pace in the mental RFC determination and hypothetical to the VE. The Court agrees.[1] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of task commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C(3) (2016). Both "'the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). "Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel

---

[1] Because the Court remands on this basis, the Court does not address Jeremy's other arguments.

confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (emphasis in original). Generally, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area." *Id*. (internal quotation marks and citations omitted). This is because the terms "simple, routine, and repetitive tasks" refer to "unskilled work," which the regulations define as work that can be learned by demonstration in less than 30 days, but "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace— can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565-66 (7th Cir. 2017); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citations omitted) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").

In analyzing the severity of Jeremy's mental impairments, the ALJ found that Jeremy had a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; adapting or managing oneself; and with regard to concentrating, persisting, or maintaining pace. (R. 19-20). The ALJ subsequently crafted an RFC with no exertional limitations and off-task time accommodated by normal breaks. *Id.* at 21. The ALJ included five non-exertional limitations: (1) simple routine tasks; (2) simple work-related decisions; (3) occasional interaction with supervisors, coworkers and the public, incidental to the work being performed; (4) gradual and infrequent changes in a routine work setting; and (5) working more with things rather than

people. *Id.* The ALJ's selected hypothetical to the VE largely reflected the same non-exertional limitations, although the ALJ asked the VE about a person who could "make work related decisions," as opposed to "simple work-related decisions." *Id.* at 172. In support of the RFC, the ALJ explained that "to accommodate the claimant's psychiatric symptoms prior to his date last insured, the undersigned limits the claimant to the performance of simple routine tasks; making simple work-related decisions; occasional interaction with supervisors, co-workers, and the public, incidental to the work being performed; working more with things rather than people; maintaining appropriate response to gradual and infrequent changes in a routine work setting with time off task adequately accommodated by normal breaks." *Id.* at 28. The ALJ further stated that "although the claimant's mental status examination[s] establish that the claimant overall remained cognitively intact[,] [t]he undersigned restricts the claimant to unskilled work to account for symptoms of anger and easy irritability to avoid complex work and accommodate the claimant's symptoms of frustration." *Id.*

While the RFC constructed by the ALJ in this case was more fulsome than a barebones "simple, routine tasks," RFC, it still failed to adequately capture Jeremy's mental limitations in this case. As an initial matter, the ALJ included language in the RFC that the Seventh Circuit has rejected as insufficient to accommodate limitations in concentration, persistence, or pace. First and foremost, reducing a claimant to "simple, routine tasks," just refers to unskilled work, and is inadequate at capturing limitations in concentration, persistence, or pace. *See Lanigan*, 865 F.3d at 565; *O'Connor-Spinner v. Astrue*, 627 F.3d at 620. *See also Joanne F. v. Berryhill*, 370 F. Supp. 3d 935, 941 (N.D. Ill. 2019). The addition of "simple work-related decisions" to the RFC has also been found to be lacking by the Seventh Circuit. *See, e.g.*, *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir.

2018), *as amended on reh'g* (Apr. 13, 2018); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Radosevich v. Berryhill*, 759 F. App'x 492, 494 (7th Cir. 2019). In a similar vein, the Seventh Circuit has held that limitations regarding a claimant's interacting with others and reduction of change in the work place pertain to a claimant's workplace adaptation or interaction with others, not a claimant's ability to concentrate, persist, or maintain pace. *See Varga*, 794 F.3d at 815; *Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019)*; Moreno*, 882 F.3d at 730. *See also Winsted*, 923 F.3d at 476-77. As a result, the ALJ's RFC rests on shaky grounds here, in that it is made up of limitations that the Seventh Circuit has criticized as deficient in terms of accommodating limitations in concentration, persistence, or pace.

Even so, the Court recognizes that the analysis does not stop there. That is, a limitation to simple, repetitive tasks may, under the appropriate circumstances, adequately translate a rating of moderate limitations in concentrating, persisting, or maintaining pace. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019). One such circumstance, as exemplified in *Burmester*, occurs when the ALJ appropriately relies on the opinion of a medical expert who has translated the claimant's CPP limitations into an RFC determination. 920 F.3d at 511. *See also Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (mental RFC limiting claimant to unskilled work involving simple, routine, and repetitive tasks with no fast-paced production line or tandem tasks, only occasional changes in work setting, and only occasional contact with public, coworkers, and supervisors supported by substantial evidence where ALJ relied on medical expert's testimony to assess claimant's limitations and craft mental RFC). Another acceptable "simple, routine tasks" scenario occurs when the claimant fails to identify further limitations, supported by the record, that should have been included by the ALJ. *Jozefyk*, 923 F.3d at 498; *Dudley*, 773 F. App'x at 842. Here, the Court finds that neither of those appropriate circumstances exists in this case.

The ALJ's RFC in this case lacks the support of a medical opinion. The state agency physicians determined, upon initial consideration and reconsideration, that there was insufficient evidence to assess Jeremy's mental RFC in this case. (R. 185-86, 192-93). According to Dr. Leslie Fryans, the state agency physicians had requested medical records from January 2008 to the present but were only provided records from October 2015 or after. *Id.* at 193. As a result, the state agency physicians logically concluded that they could not determine whether Jeremy had a disability during the relevant time period, from January 2009 to September 2013. As a result, the only available medical opinions in the record came from Doctors Benton and Zoko. *See id.* at 891-92, 897-99, 906-07. The ALJ considered Dr. Zoko's treatment records but did not weigh his July 2008 opinion that Jeremy was unemployable. *Id.* at 22-28, 898. As for Dr. Benton's similar June 2008 opinion that Jeremy's "Post Traumatic Stress Disorder symptoms make him unable to work," the ALJ gave the opinion little weight, due to the timing of the opinion and the fact that the doctor drew an ultimate employability determination. *Id.* at 30, 907. The ALJ rejected Dr. Benton's November 2008 conclusion that Jeremy could not work for the same reasons. *Id.* at 30, 891-92. Because the state agency physicians did not provide a mental RFC, and because the ALJ did not give weight to the opinions of Doctors Zoko and Benton, the ALJ's RFC is not buttressed by a medical expert who translated Jeremy's CPP limitations into a mental RFC.[2]

---

[2] Granted, Jeremy did not provide a mental RFC opinion from the relevant time period. However, the Court declines to hold that against Jeremy, since he did provide the treatment records of Drs. Benton and Zoko, whose opinions were formed a mere number of months before the alleged onset date. (R. 891-92, 897-99, 906-07). Their opinions concerned Jeremy's PTSD treatment and symptoms, and Jeremy continued to have PTSD after the alleged onset date. Thus, their opinions are still probative to Jeremy's disability claims, even if falling slightly outside of the relevant time period. In any event, while it is the claimant's "burden to present medical evidence supporting [his] claim of disability," *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014), if there are gaps in the record, "it [i]s the ALJ's responsibility to recognize the need for further medical evaluations . . . before making her residual functional capacity and disability determinations." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010).

Jeremy, moreover, has suggested mental limitations that the ALJ's RFC omits. Specifically, Jeremy contends that the RFC failed to account for his PTSD triggers, including "loud noises such as thunderstorms and fireworks that result[] in concentration difficulty, flashbacks, and intrusive thoughts." Doc. [19] at 12. Jeremy further observes that the RFC fails to account for the level of stress that he can handle. *Id.* at 12-13.

Jeremy's suggested noise and stress limitations are supported by the record. Jeremy's treatment records reflect that loud noises triggered Jeremy's PTSD symptoms, which included nightmares, flashbacks, being easily startled, and intrusive thoughts. (*See* R. 821, 891, 906). Jeremy's medical record similarly reveals stress as triggering various symptoms for him, including panic attacks, agitation, and passive suicidal ideations. *Id.* at 454, 811, 827. For instance, in October 2010, Jeremy became so worried and anxious about the financial stress of paying for a car repair that he punched a solid wood cabinet. *Id.* at 837. A year later, Jeremy reported to a social worker that his agitation from a prolonged exposure therapy session spilled into the next day, leading to a verbal altercation with a softball umpire, who kicked Jeremy out of the game and called the police on him. *Id.* at 811. Jeremy reported various stressors in his life at the time, including financial strain, expecting a new baby, and finding a house, which the social worker concluded were "likely adding to increased symptoms." *Id.* at 811-12. In October 2014, Dr. Zoko similarly observed that Jeremy has a history of exacerbated PTSD symptoms, "especially in [the] context of familial discord and stress." *Id.* at 1149. Along those same lines, Jeremy's doctors consistently identified poor coping skills, marital issues, interpersonal relationship issues, and financial problems in his Axis VI diagnoses, *see, e.g.*, *id.* at 821, 827, 834, 1193, denoting psychosocial and environmental problems that may affect a patient's mental disorders. *See Sarah M. v. Saul*, No. 3:19CV1150, 2020 WL 4932541, at *15 (N.D. Ind. Aug. 21, 2020) (citing DSM-IV-TR at 29).

Thus, this is not a case where the claimant's brief did not "suggest a better way to capture the idea behind limitations in concentration, persistence, and pace and apply those problems to job requirements," *Saunders*, 777 F. App'x at 825. Instead, Jeremy has offered two record-supported limitations that could have impacted the outcome of the case, namely the avoidance of loud noises and a specification for low-stress work. *See Winsted*, 923 F.3d at 472 ("where a claimant's limitations are stress-related, as [the claimant's] appear to be, the hypothetical question should account for the level of stress a claimant can handle."). While the ALJ provided a lengthy medical summary that included discussion of Jeremy's PTSD triggers of loud noises and stress, a long recitation of a claimant's medical history does not constitute analysis. *See Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *7 (N.D. Ill. Oct. 30, 2015) (citation omitted) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion."); *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) (citation omitted) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled."). The ALJ did not explain how the RFC limitations accommodate Jeremy's moderate CPP limitations, given Jeremy's PTSD triggers. The ALJ stated that she restricted Jeremy to unskilled work to account for symptoms of anger and easy irritability, (R. 28), but failed to explain how the reduction to unskilled work would prevent stress or loud noises from triggering Jeremy's PTSD symptoms. Without a more targeted explanation by the ALJ as to how the hypotheticals and RFC accommodate Jeremy's moderate CPP limitations, the Court cannot find that the ALJ built the requisite accurate and logical bridge from the evidence to her conclusion. *See McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). The lack of a medical opinion in support of the RFC, as discussed above, further undermines the ALJ's decision in this case. Although it is the ALJ's duty to formulate the RFC, *see Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007);

20 C.F.R. §§ 404.1545, 404.1546, an ALJ "cannot reject all the relevant medical RFC opinions and then construct[ ] a middle ground and c[o]me up with her own physical RFC assessment without logically connecting the evidence to the RFC findings." *Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *5 (N.D. Ill. Jan. 23, 2020) (internal quotation marks omitted) (quoting *Bailey v. Barnhart*, 473 F.Supp.2d 822, 838 (N.D. Ill. 2006)). Here, the ALJ failed to point to sufficient evidence supporting her lay translation of Jeremy's medical records into the selected RFC, particularly with respect to Jeremy's PTSD triggers, as discussed above.

In conclusion, the combination of the above errors warrant remand. The ALJ included language in the RFC that the Seventh Circuit has rejected as insufficient to accommodate limitations in concentration, persistence, or pace; the ALJ's RFC is not supported by a medical expert who translated Jeremy's CPP limitations into a mental RFC; and the ALJ omitted Jeremy's suggested noise and stress limitations that were supported by the record.

On remand, the ALJ must properly account for Jeremy's moderate limitations in concentration, persistence, and pace in her mental RFC and hypothetical to the VE and cite specific evidence that supports her conclusion. As the Seventh Circuit has explained, "the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619. Furthermore, considering the lack of timely medical opinion evidence regarding Jeremy's mental RFC, the ALJ shall consider calling a medical expert to review Jeremy's medical records and translate the CPP limitations into a mental RFC for the ALJ to rely on.

## <u>CONCLUSION</u>

For these reasons, Jeremy's motion for summary judgment [18] is granted in part and denied in part, and the Commissioner's motion for summary judgment [30] is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: March 31, 2021

Sunil R. Harjani
United States Magistrate Judge